**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**JOHN DOE,**

        **Plaintiff,**

**v.**                                             **Case No.: 3:12-cv-00065**

**MARK A. SORSAI, PUTNAM COUNTY
BOARD OF EDUCATION, SHERRI D.
GOODMAN, W.V. DEPARTMENT OF
EDUCATION,**

        **Defendants.**

## PROPOSED FINDINGS AND RECOMMENDATIONS

On January 12, 2012, plaintiff filed a *pro se* Complaint under 42 U.S.C. § 1983 (ECF No. 1), alleging violations of his constitutional rights guaranteed by the Fourteenth Amendment to the United States Constitution. Pending before the Court are Defendants' Motions to Dismiss the Complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) (ECF Nos. 12, 25, 30, and 52). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and is referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth herein, the undersigned recommends that plaintiff's Complaint be dismissed in its entirety, with prejudice, for failure to state claims compensable at law.

## I.    Relevant Facts

According to the complaint, Plaintiff John Doe (hereinafter "Doe") was a tenured teacher employed by the Putnam County Board of Education. In November 2009, Doe was involuntarily admitted to a psychiatric hospital with a diagnosis of steroid psychosis. After receiving inpatient and outpatient treatment, Doe was released by his psychiatrist to return to work. Nonetheless, Doe requested medical leave in order to obtain additional treatment and did not return to work the remainder of the school year. A few days after requesting leave, Doe was advised by his immediate supervisor at the school that a female student had accused Doe of inappropriately touching her in front of a classroom of students.[1] Doe denied the allegations, but, ultimately, the Putnam County Board of Education reported the student's accusations to the county prosecutor and to the West Virginia Department of Education.

In July 2010, Doe received a letter from Defendant, Mark Sorsaia ("Sorsaia"), Putnam County's Prosecuting Attorney. Sorsaia informed Doe that he was the target of an investigation that would likely result in multiple felony charges stemming from the alleged inappropriate touching of the student. Doe retained legal counsel, who met with Sorsaia to discuss the potential charges. As a result of several conversations between Sorsaia and Doe's counsel, Sorsaia agreed to withhold filing charges against Doe if Doe would resign his teaching position and agree never to return to the Putnam County school system. Sorsaia cautioned that if Doe attempted to return to his teaching position, he would be arrested. Doe eventually resigned from Defendant

---

[1]The incident occurred before Doe's medical leave in March 2010, although the precise date is unclear. The student claimed that Doe repeatedly touched her buttocks while she was sitting on a wooden stool located in the front of the classroom.

Putnam County Board of Education and obtained a non-teaching position with a federal agency located outside of Putnam County. [2]

On September 14, 2010, Defendant Sherri Goodman ("Goodman"), Staff Attorney for Defendant West Virginia Department of Education, notified Doe by certified mail that an investigation into the student's charges was ongoing. Based upon the information available, Goodman intended to recommend the initiation of formal proceedings to revoke Doe's teaching certificates. To avoid the embarrassment of a revocation hearing, Goodman offered Doe the opportunity to voluntarily surrender his certificates. Goodman provided no deadline with the offer, but cautioned that if Doe refused to accept it, an evidentiary hearing would be scheduled before the West Virginia Commission for Professional Teaching Standards, Professional Practice Panel. The Panel would then make a recommendation to the State Superintendent regarding whether to revoke Doe's certificates, and the Superintendent would issue a final order determining the matter. To date, Doe maintains his innocence and has refused to relinquish his certificates. A revocation hearing has not been scheduled.

In November 2011, a technology training position became available in the Kanawha County school system, which primarily involved the training of teachers and required limited student contact. Doe decided to apply for the position; therefore, he instructed his attorney to contact Sorsaia and advise him of Doe's

---

[2]The parties disagree about whether plea negotiations occurred and whether an agreement was reached. Doe contends that he was not aware of an agreement, did not authorize his attorney to enter into an agreement, and never signed any formal documentation. Sorsaia concedes that no written agreement was executed, but alleges that an agreement not to prosecute was reached, which required Doe to relinquish his position and forgo future employment with the Putnam County school system. Sorsaia points to Doe's subsequent resignation and his concern about applying for positions within the school system as evidence that Doe knew about the agreement, understood it terms, and intended to be bound by it (ECF No. 24).

intention.[3] Upon learning of Doe's plan, Sorsaia warned that he would consider reopening the criminal matter if Doe applied for the job or for any other position in the school system "because [Doe] groped a student in front of the class." For that reason, Doe refrained from submitting an application.

## II.    Summary of Allegations and Defenses

Doe contends that Sorsaia violated his constitutional right to due process by effectuating his removal from the Putnam County school system without following proper legal procedures. Moreover, Doe claims that Sorsaia continues to violate his rights by threatening to reopen the criminal matter if Doe seeks employment with the school system at any time in the future. In regard to the Putnam County Board of Education ("Board"), Doe alleges that the Board violated his rights by not obtaining his side of the story and by reporting the female student's charges to the prosecutor and the West Virginia Department of Education; thus, attempting to wrongfully secure revocation of his teaching certificates. Finally, Doe asserts that Goodman and the West Virginia Department of Education ("Department") are actively violating his due process rights by prolonging the revocation proceedings. He emphasizes that more than one year has passed since Goodman's notification letter without any action by the Department. According to Doe, as long as the charges remain pending, he is virtually precluded from obtaining a teaching position in West Virginia. Doe claims he was forced under duress to resign from the Putnam County school system and take a lower paying job located over an hour away from his home. He seeks the following relief:

---

[3] It is unclear why Doe made contact with Sorsaia when the opening was with a different school system; however, an explanation is not critical to the resolution of this claim.

1.  An injunction requiring the Putnam County Board of Education to reinstate him in his teaching position; to reinstate his tenure and years of service; and to deposit into his retirement account all payments that were not made during his absence from the school system;

2.  An injunction requiring Goodman and the West Virginia Department of Education to cease their investigation and proceedings against him; and

3.  An injunction requiring Sorsaia to quit threatening to arrest and prosecute Doe if he seeks a teaching position in Putnam County.

Alternatively, Doe asks the Court to award him $1,521.239.40 in damages from Sorsaia and the Board to compensate him for the loss of his teaching position; actual damages; attorneys fees; and punitive damages.[4]

In response to Doe's allegations, Sorsaia argues that he enjoys absolute prosecutorial immunity from suit pursuant to the United States Supreme Court's decision in *Imbler v. Pachtman,* given that all of his alleged wrongful actions were "intimately associated with the judicial phase of the criminal process." 424 U.S. 409, 430 (1976). He emphasizes that participating in plea negotiations and making decisions about whether or not to prosecute felonious behavior are actions that fall squarely within the judicial phase of the criminal process and, thus, are immune from suit. Doe counters that the principle of absolute prosecutorial immunity does not shield every action taken by a prosecutor; instead, "the nature of the function performed, not the identity of the actor who performed it" will determine the applicability of absolute immunity. *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Doe alleges that Sorsaia went rogue, ignoring the procedural safeguards of the legal system and using intimidation as a weapon to

---

[4] Doe also requests that the Court order Defendants Sorsaia and the Department to return or destroy confidential medical records supplied to them by Doe's attorney. Given that Doe voluntarily tendered the records and they are part of ongoing proceedings conducted by agencies of the State of West Virginia, the Court is not in a position to grant this relief.

deprive Doe of his right to work. Doe contends that Sorsaia acted outside the scope of his quasi-judicial duties when he took steps to remove Doe from his teaching position and prevent him from returning to the school system. Consequently, because Sorsaia is not performing litigation-related duties when he uses coercion and intimidation to control behavior, he is not entitled to absolute immunity.

Goodman and the Department contend that they are entitled to dismissal based upon the principle of sovereign immunity adopted in the Eleventh Amendment to the United States Constitution. In addition, Goodman and the Department maintain that Doe's case against them is premature in that no action has been taken against his certificates; his right to procedural due process is guaranteed by the revocation action; and he has the ability to appeal any decision of the Department to the West Virginia courts. For these same reasons, Goodman and the Department further urge the Court to abstain from jurisdiction and allow the Department an opportunity to complete its administrative process.[5] In response, Doe states that Goodman and the Department should be prohibited "from revoking the teaching certificates of an innocent person and sufficient time has passed for Defendant Goodman to schedule such a hearing." He maintains that the looming administrative

---

[5] The Department also raises the failure of Plaintiff to file a notice prior to institution of suit as required by West Virginia Code Section 55-17-3, which provides:

> Notwithstanding any provision of law to the contrary, at least thirty days prior to the institution of an action against a government agency, the complaining party or parties must provide the chief officer of the government agency and the Attorney General written notice, by certified mail, return receipt requested, of the alleged claim and the relief desired. Upon receipt, the chief officer of the government agency shall forthwith forward a copy of the notice to the President of the Senate and the Speaker of the House of Delegates. The provisions of this subdivision do not apply in actions seeking injunctive relief where the court finds that irreparable harm would have occurred if the institution of the action was delayed by the provisions of this subsection.

The mandate of this section is a jurisdiction prerequisite to filing suit against certain state agencies and requires dismissal of the action without prejudice in the absence of a pre-suit notice. *Petersen v. West Virginia Board of Governors,* 2007 WL 2220192 (S.D.W.Va. July 31, 2007).

hearing has had a "chilling effect" on his ability to apply for teaching positions.

Finally, the Board asserts that Doe's claims against it should be dismissed because Doe simply fails to allege facts against the Board that give rise to a plausible claim for relief. The Board argues that it had statutory duties to report the student's claims of sexual abuse to the county prosecutor and the Department and took no other action against Doe. Doe voluntarily resigned his position and has made no attempt to be re-hired; therefore, Doe is unable to demonstrate any action by the Board that resulted in a constitutional deprivation. Doe agrees that his complaint against the Board revolves around its act of reporting the student's accusations to others, but contends that the Board is a "defacto Defendant," because the remedy sought by Doe requires the Board to reinstate his position and benefits as a Putnam County teacher.

## III.    **Standard of Review**

42 U.S.C. § 1983 provides a remedy to parties who are deprived of federally protected civil rights by persons acting under color of any state "law, statute, ordinance, regulation, custom, or usage." Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Monroe v. Pape,* 365 U.S. 167, 171-172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must present facts showing that: (1) a person (the defendant) deprived him or her of a federally protected civil right, privilege or immunity and (2) that the defendant did so under color of State law. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121, * 4 (D.S.C. Sept. 8, 2010); *See American Mfr. Mut. Ins. Co. v. Sullivan*, 526

U.S. 40, 50-52, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999).

Each Defendant argues that Doe's complaint should be dismissed against it because Doe fails to state a claim for which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), *quoting Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Supreme Court explained the "plausibility" standard in *Iqbal*, stating:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'

*Iqbal,* 556 U.S. at 678, *quoting Twombly*, 550 U.S. at 556-57 (internal citations omitted). Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense."  *Id.* at 679, citing *Iqbal v. Hasty,* 490 F.3d 143, 157-158 (2nd Cir. 2007). While the Court is required to accept as true the factual allegations asserted in the complaint, it is not required to accept the legitimacy of legal conclusions that are "couched as ... factual allegation[s]." *Id.* at 678, quoting *Bell Atlantic Corp*, 550 U.S at 555.  "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal

conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity, and then determine whether they plausibly give rise to an entitlement of relief." *Id.* at 679. This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

Applying these principles, the undersigned has analyzed plaintiff's complaint to determine its facial plausibility under 42 U.S.C. § 1983.

## IV.   <u>Analysis</u>

### A.   *Defendant Mark A. Sorsaia*

As previously stated, Doe raises two distinct acts by Sorsaia that allegedly violate Doe's right to due process of law. Doe claims that Sorsaia (1) coerced Doe to resign his teaching position in order to avoid criminal charges and (2) threatens to retaliate against Doe in the future if he exercises his constitutional right to seek employment with the school system. Doe demands both monetary damages and injunctive relief.

With respect to Doe's claim against Sorsaia for money damages, the undersigned **FINDS** that Sorsaia is entitled to absolute prosecutorial immunity. In

*Imbler v. Pachtman*, the United States Supreme Court held that prosecutors enjoy absolute immunity for conduct "intimately associated with the judicial phase of the criminal process." 424 U.S. at 430-31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). Absolute immunity is immunity from suit, not merely from the assessment of damages, and applies to quasi-judicial acts of a prosecutor irrespective of his motive or intent. By contrast, for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate," only qualified immunity is available. *Id.* Qualified immunity provides protection to a state official or employee for discretionary acts so long as those acts are neither malicious nor violative of "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To determine whether actions are "judicial" rather than administrative or investigative, the court considers the "functional nature of the activities" at issue. *Id.* at 430. When a prosecutor takes action in his core role as an advocate for the state, his activity is quasi-judicial in nature and afforded absolute immunity. *Buckley v. Fitzsimmons,* 509 U.S. 259, 273, 113 S.Ct. 2606, 125 L.Ed. 2d 209 (1993).

Although the Supreme Court has declined to catalog all of the specific prosecutorial activities that are quasi-judicial in nature, it has made clear that decisions related to the initiation of prosecution fall within the "judicial phase of the criminal process" and, thus, are not actionable. The Court explained in *Imbler*:

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be

> expected with some frequency, for a defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate.

*Imbler*, 424 U.S. at 424-25; *See also Buckley*, 509 U.S. at 273 (1993) ("[A]cts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."). This Circuit has likewise confirmed that a prosecutor is entitled to absolute immunity from claims based upon decisions regarding "whether and when to prosecute." *Lyles v. Sparks*, 79 F.3d 372, 377 (4th Cir. 1996) (quoting *Imbler*, 424 U.S. at 431 n. 33); *See also Springman v. Williams*, 122 F.3d. 211 (4th Cir. 1997); *Ehrlich v. Giuliani*, 910 F.2d 1220 (4th Cir. 1990).

The outcome of plea negotiations often determines a prosecutor's decision regarding whether and when to prosecute; accordingly, a prosecutor's activities in the context of plea bargaining are entitled to absolute immunity. *Taylor v. Cavanaugh*, 640 F.2d 450, 453 (2nd Cir. 1981) (plea negotiation is an "essential component" of criminal justice advocacy, *citing Santobello v. New York*, 404 U.S. 257, 260, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971)). "The nature of absolute immunity is such that it attaches to even conditional prosecutorial decisions," removing them from "any judicial scrutiny of the motive for and reasonableness of official action." *Schloss v. Bouse*, 876 F.2d 287, 291 (2nd Cir. 1989), *citing Robinson v. Via*, 821 F.2d. 913, 918 (2nd Cir. 1987). As a result, conditional agreements not to prosecute are entirely protected from suit; the only exception being instances in which the prosecutor's actions are "'manifestly or palpably beyond his authority," or performed in the "clear absence of all jurisdiction."' *Schloss*, 876 F.2d at 291, *citing Stump v. Sparkman*, 435 U.S. 349,

357, 98 S.Ct. 1099, 55 L.Ed. 2d 331 (1978) (internal citation omitted). Doe's contention that "negotiations" never occurred is unpersuasive inasmuch as Doe admits that Sorsaia conditioned an agreement not to arrest and prosecute him on his voluntary resignation from his teaching position. The fact that Doe never signed a written plea agreement or that Sorsaia never formally charged Doe is irrelevant to the analysis. Instead, the pertinent inquiries are whether (1) Sorsaia was acting within his core role as an advocate for the state when he extended the conditional offer not to prosecute Doe; and (2) the quid pro quo demanded by Sorsaia was not clearly beyond his authority. *See Blazier v. Larson*, 2011 WL 4552525 *1 (10th Cir. Oct. 4, 2011).

In *Blazier*, the Tenth Circuit Court of Appeals reiterated that absolute immunity "extends to 'conditional prosecutorial decisions,' which provisionally withhold charges in exchange for a quid pro quo, so long as the threat of prosecution is not tied to a demand that is 'manifestly or palpably beyond [the prosecutor's] authority.'" 2011 WL 4552525 *1 (Oct. 4, 2011), *quoting Schloss,* 876 F.2d at 291. In *Blazier,* the prosecutor threatened to bring felony witness retaliation charges against the plaintiff unless he removed certain internet postings regarding an alleged assault victim. The plaintiff contended that this threat of prosecution constituted an unlawful deprivation of his First Amendment right to free speech. The Court concluded that "[t]hreatening to bring charges for conduct a prosecutor believes to be felonious could hardly be manifestly or palpably beyond his authority;" therefore, the prosecutor was entitled to absolute immunity from plaintiff's suit. *Id.*; *See also Cady v. Arenac County,* 574 F.3d 334, 341 (6th Cir. 2009) (Prosecutor's threat to reissue charges against a criminal defendant if he pursued civil damages against his alleged assaulter was entitled to immunity inasmuch as "a prosecutor's allegedly improper

motive alone is not enough to defeat absolute immunity, so long as the general nature of his actions falls within the scope of his duties as an advocate for the state."); *Barr v. Abrams,* 810 F.2d 358, 361 (2nd Cir. 1987) ("unless a prosecutor proceeds in the clear absence of all jurisdiction, absolute immunity exists for those prosecutorial activities intimately associated with the judicial phase of the criminal process."). In the present case, Sorsaia's demand that Doe resign his teaching position and permanently separate from the school system in exchange for an agreement not to prosecute him for the alleged sexual abuse was not manifestly or palpably beyond Sorsaia's authority. Sorsaia's duties as the county prosecutor included enforcing the law, shielding victims and potential witnesses, and attending to matters in which the county or county board of education was interested. [6]   Here, the accusing student attended the school at which Doe worked and claimed that the abuse occurred in the presence of other students who attended Putnam County schools. Accordingly, Sorsaia's demands were well within his statutory authority and achieved legitimate prosecutorial goals. *See Town of Newton v. Rumery,* 480 U.S. 386, 107  S.Ct. 1187, 94 L.Ed.2d 405 (1987) (Prosecutor's action in conditioning a dismissal agreement on criminal defendant's release of his right to file a § 1983 action was immune from suit

---

[6] West Virginia Code § 7-4-1 describes the duties of a prosecutor as follows:

> It shall be the duty of the prosecuting attorney to attend to the criminal business of the state in the county in which he is elected and qualified, and when he has information of the violation of any penal law committed within such county, he shall institute and prosecute all necessary and proper proceedings against the offender, and may in such case issue or cause to be issued a summons for any witness he may deem material. Every public officer shall give him information of the violation of any penal law committed within his county. It shall also be the duty of the prosecuting attorney to attend to civil suits in such county in which the state, or any department, commission or board thereof, is interested, and to advise, attend to, bring, prosecute or defend, as the case may be, all matters, actions, suits and proceedings in which such county or any county board of education is interested.

as it was directly related to his prosecutorial responsibilities); *Rucks v. Owens*, 2003 WL 21005252 (N.D.Ill. May 1, 2003) (Prosecutor's threat to file felony drug or conspiracy charges against a corrections officer unless she immediately resigned her position was afforded absolute immunity); *Arnold v. McClain,* 926 F.2d 963 (10th Cir. 1991) (Securing resignation of a police officer in exchange for agreement not to prosecute perjury charge entitled to absolute prosecutorial immunity); *McGruder v. Necaise,* 733 F.2d 1146 (5th Cir. 1984) (Prosecutor, who conditioned dismissal of criminal charges against arrestee on arrestee's agreement to dismiss his civil action for personal injuries suffered in a jail fire, enjoyed absolute immunity); *Casertano v. Kerwin,* 2010 WL 3257643 (D.Conn. Aug. 11, 2010) (Requiring police officer to resign his position as a condition of avoiding prosecution and the prosecution of his wife and daughter was a prosecutorial act entitled to absolute immunity). As noted in *Casertano,* "[s]imply because the condition in this case did not take the specific form of a term of incarceration or probation does not render the negotiations 'plainly beyond' the authority of a prosecutor in plea negotiations." 2003 WL 21005252 *3. As such, Sorsaia is entitled to absolute prosecutorial immunity from money damages in this civil action.

On the other hand, Doe's request for prospective injunctive relief is not barred by the doctrine of absolute prosecutorial immunity. While § 1983 explicitly provides judicial officers with absolute immunity from claims for injunctive relief when they are performing judicial functions, that same immunity is not available to prosecutors. *Pulliam v. Allen,* 466 U.S. 522, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984); *Supreme Court of Va. v. Consumers Union of the United States,* 446 U.S. 719, 736-37, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980) (absolute immunity from claims for injunctive

relief is not available to prosecutors as they are state officers threatening to enforce and enforcing state law). Accordingly, the merits of Doe's claim for injunctive relief against Sorsaia must be addressed.

Doe contends that Sorsaia repeatedly threatens to arrest and prosecute him on "closed" charges of sexual abuse if Doe seeks employment with the school system.[7] Doe argues that Sorsaia's threat is not made in furtherance of an agreement not to prosecute, since such an agreement was never executed, but is made solely as a way to manipulate Doe's future behavior. Doe asks whether "prosecutors enjoy such immunity that they can forever hold their heavy sticks of power over the heads of innocent citizens, of whom they have not charged or prosecuted, but wish to control ... [m]ust I forever go through life, not being able to teach for fear of this prosecutor arresting me or re-opening a case on me if I step into a classroom?" Thus, Doe seeks an order from the Court enjoining Sorsaia from carrying out a future arrest and prosecution, given that those acts would be in retaliation for Doe exercising his constitutional right to work as a teacher, rather than acts necessary to accomplish legitimate prosecutorial functions. (*See* ECF No. 1 at 9).

As a general rule, a government "retains broad discretion as to whom to prosecute," *Wayte v. United States,* 470 U.S. 598, 607-08, 105 S.Ct 1524, 84 L.Ed.2d 74 (1982), and there is a "presumption of regularity behind a charging document." *Hartman v. Moore,* 547 U.S. 250, 265, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006).  "[S]o long as the prosecutor has probable cause to believe that the accused committed an

---

[7] In his request for relief against Sorsaia, Doe "respectfully requests injunctive relief wherefore Defendant Mark A. Sorsai [sic] does not have plaintiff arrested vindictively because Plaintiff seeks or gets a job ... [and] does not reopen his case on Plaintiff vindictively because Plaintiff seeks or gets a job." In view of this language, the undersigned construes Doe's action for prospective relief against Sorsaia to state a retaliation claim rather than a direct constitutional claim. *See Miller v. Mitchell,* 598 F.3d 139, 149 (3rd Cir. 2010).

- 15 -

offense defined by the statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978). "Ordinarily, there should be no interference with such officers; primarily, they are charged with the duty of prosecuting offenders against the laws of the state, and must decide when and how this is done. The accused should first set up and rely upon his defense in the state courts ... unless it plainly appears that this course would not afford adequate protection." *Fenner v. Boykin,* 271 U.S. 240, 243-44, 46 S.Ct. 492, 70 L.Ed. 927 (1926). The principles of comity and federalism mandate that federal courts refrain from unduly interfering with a state's enforcement of its criminal statutes, even when those statutes are unconstitutional. *Wooley v. Maynard,* 430 U.S. 705, 712-13, 97 C.Ct. 1428, 51 L.Ed.2d 752 (1997) ("[A] court will not enjoin the enforcement of a criminal statute even though unconstitutional since such a result seriously impairs the State's interest in enforcing its criminal laws, and implicates concerns for federalism which lie at the heart of *Younger.*"). These principles promote respect for state functions and a "continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)

Nonetheless, federal courts have "limited authority to affect prosecutorial actions when those actions are taken in violation of the Constitution" ***and*** when circumstances make preemptive federal intrusion necessary to ensure adequate protection of federal constitutional rights. *Miller v. Mitchell,* 598 F.3d 139, 155 (3rd Cir. 2010), *citing United States v. Santtini,* 963 F.2d 585, 596 (3rd Cir. 1992). In the

context of a **pending** criminal action, a federal court may enjoin the proceeding only "in certain exceptional circumstances—where irreparable injury is 'both great and immediate,' where the state law is 'flagrantly and patently violative of express constitutional prohibitions,' or where there is a showing of 'bad faith, harassment, or … other unusual circumstances that would call for equitable relief.'" *Mitchum v. Foster,* 407 U.S. 225, 230-31, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972), *quoting Younger,* 401 U.S. at 46, (internal page citations omitted). In equally rare instances, a prosecutor may be enjoined from bringing a **future** criminal action when the state law he seeks to enforce is blatantly unconstitutional, *Ex Parte Young,* 209 U.S. 123, 28 S.Ct 441, 52 L.Ed. 714 (1908), and there are "exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights." *Spielman Motor Sales Co. v. Dodge*, 295 U.S. 89, 95, 55 S.Ct. 678, 680, 79 L.Ed. 1322 (1935). To justify federal interference, the plaintiff must demonstrate (1) a threat of sufficient immediacy and reality to warrant the issuance of an injunction, (2) the likelihood of success on the merits, (3) the likelihood of irreparable harm from allowing the prosecution to proceed, and (4) a remedy at law that is plainly inadequate. The inconvenience and cost of mounting a defense, both financially and emotionally, do not constitute irreparable loss sufficient to enjoin a good faith prosecution. *Douglas v. City of Jeanette,* 319 U.S. 157, 63 S.Ct 877, 881, 87 L.Ed. 1324 (1943). As the Supreme Court explained in *Douglas*, "[i]t is a familiar rule that courts of equity do not ordinarily restrain criminal prosecutions. No person is immune from prosecution in good faith for his alleged criminal acts. Its imminence, even though alleged to be in violation of constitutional guaranties, is not a ground for equity relief since the lawfulness or constitutionality of the statute or ordinance on

which the prosecution is based may be determined as readily in the criminal case as in a suit for an injunction." *See also Spence v. Cole,* 137 F.2d 71, 73 (4th Cir. 1943) ("Where the threatened prosecution is by state officers for alleged violations of a state law, the state courts are the final arbiters of its meaning and application, subject only to review by this Court on federal grounds appropriately asserted. Hence the arrest by the federal courts of the processes of the criminal law within the states, and the determination of questions of criminal liability under state law by a federal court of equity, are to be supported only on a showing of danger of irreparable injury 'both great and immediate,'" *quoting Spielman Motor Sales Co.,* 295 U.S. at 95).

Typically, federal court cases seeking to enjoin future criminal prosecutions raise challenges to the constitutionality of the statutes that trigger the threatened prosecution. That is not the case in the present action. Doe does not allege that West Virginia's sexual abuse laws are unconstitutional, nor does he claim that enforcement of those laws would give rise to a constitutional violation. Instead, Doe contends that he is innocent of the charges; thus, his future arrest and prosecution for sexual abuse would be vindictive acts taken in retaliation for the exercise of his constitutionally protected right to apply for an employment position with the local school system. "To prevail on a retaliation claim, a plaintiff must prove '(1) that he engaged in constitutionally–protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation.'" *Miller v. Skumanick,* 605 F.Supp.2d 634, 643 (M.D.Pa. 2009), *quoting Eichenlaub v. Twp. of Indiana,* 385 F.3d 274, 282 (3rd Cir. 2004). Persuasive evidence showing that the prosecutor is without a basis in fact or law to pursue the charge levied against the plaintiff is essential to success on this type of claim; otherwise, the direct causal

connection between engaging in the protected activity and the subsequent prosecution cannot be maintained. *Id.* Simply put, a retaliatory prosecution can be enjoined because "[t]o punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort,'" *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1984), *citing Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, while on the contrary, threatening to prosecute a person on a charge supported by probable cause is the right and duty of a prosecutor regardless of any other consideration.

The Third Circuit Court of Appeals recently addressed a retaliation claim similar to that asserted by Doe. *Miller,* 598 F.3d 139. In *Miller,* a state prosecutor accused three teenage girls of violating state child pornography laws for allegedly forwarding "provocative" photographs of themselves to other students in their school. The prosecutor offered to forgo the prosecution of the girls if they in turn agreed to attend an education program, which was designed to help the participants "gain an understanding of what it means to be a girl in today's society, both advantages and disadvantages" and which required the girls to write an essay on what they had done wrong. *Id.* at 144. If the girls refused to participate in the program or failed to complete the course, the prosecutor vowed to bring charges against them. The girls' parents objected to the prosecutor's offer on several grounds. First, they disagreed with his basic premise that the photographs violated the state pornography statute. Second, they argued that forcing the girls to write an essay explaining what they did wrong violated their First Amendment right to be free of compelled speech. Finally, the parents contended that coercing the girls to attend an educational course

mandated by the prosecutor usurped the parents' fundamental substantive due process right "to raise their children without undue state interference." *Id.* at 150, *quoting Gruenke v. Seip,* 225 F.3d 290, 303 (3rd Cir. 2000). The parents alleged that because the girls' photographs were not illegal under the statute, future prosecution of the girls for "sexting" could only be in retaliation for the exercise of their constitutional right not to participate in the education program.

Analyzing the facts of the case under the relevant law, the Court concluded that plaintiffs were entitled to an injunction because (1) they were likely to succeed on their claim that the prosecution's forced participation in the education program violated their constitutional rights; (2) the threatened prosecution met the definition of a retaliatory act in that it was "sufficient to deter a person of ordinary firmness from exercising his constitutional rights,"[8] and (3) there was a direct causal connection between the protected activity and the retaliatory act. In rendering its decision, the Court took great pains to explain that the specific facts of the case thrust it into the rare category of future criminal prosecutions subject to injunctive relief. The Court acknowledged that a presumption of regularity existed behind every charging decision and emphasized that to successfully establish the final element of a retaliation claim, plaintiff must show "a retaliatory motive on the part of the official urging prosecution **combined with a lack of evidence of probable cause supporting the prosecutor's decision to go forward**." *Id., quoting Hartman v. Moore,* 547 U.S. 250, 265, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (emphasis added). The Court specifically found that the state pornography statute only applied to

---

[8] *Mitchell v. Horn,* 318 F.3d 523, 530 (3rd Cir. 2003).

individuals that possessed or transmitted a pornographic image, which were essential elements of the crime that the prosecution could not prove given the absence of evidence that the girls possessed or transmitted the photographs. The lack of probable cause to support the prosecutor's decision to proceed with pornography charges was critical to establishing his retaliatory motive and causation.[9]   Citing to *Hartman*, the Court confirmed that "plaintiffs bringing retaliatory prosecution claims must allege and prove lack of probable cause as an element of causation ...  Therefore, if probable cause exists, the injunction must be lifted." *Miller,* 598 F.3d at 154 (internal citations omitted).

Considering the Court's analysis in *Miller* "and the Supreme Court's reliance on 'the longstanding presumption of regularity accorded to prosecutorial decision making,'" *Id.,* the undersigned is hard-pressed to find the exceptional grounds necessary to support injunctive relief in this case. The parties do not dispute that a student alleged sexual abuse by Doe, which was purportedly witnessed by other students and, therefore, provides probable cause for criminal prosecution. Although Doe proclaims that he is innocent of inappropriate touching, he admits to some contact with a female student who refused to get off his stool during classroom instruction. It is further undisputed that Sorsaia offered to withhold prosecution on the basis that Doe resign his position and forgo future employment in the school system, conditions reasonably intended to decrease the risk of repeated behavior by Doe and to protect the alleged victim and witnesses. Despite his protestations to the

---

[9] Although the Court did not find it necessary to opine on the strength of the parents' position that the photographs were not pornographic, the Court described the pictures as being relatively benign, showing young girls in bathing suits and underclothing. Despite the lack of nudity in these photographs, the prosecutor argued that they constituted child pornography because the girls were posed "provocatively."

contrary, Doe clearly understood that these conditions were a quid pro quo of some sort as evidenced by his resignation and subsequent contact with Sorsaia regarding an employment opportunity in the school system. Thus, Doe simply cannot establish a *prima facie* case of retaliatory prosecution. Consequently, the undersigned **FINDS** that Doe's complaint fails to state a plausible claim for injunctive relief against Sorsaia and must be dismissed.

### B.    *Defendant Putnam County Board of Education*

The Board seeks dismissal of Doe's complaint against it on the basis that the complaint "fails to allege any facts that would substantiate a claim that his constitutional rights have been violated" by the Board.  The undersigned agrees.  Doe complains that the Board did not get his "side of the story" before reporting the student's accusations of abuse to the police and the West Virginia Department of Education. According to Doe, the Board singled him out for unfair and unreasonable treatment because he was a "whistleblower" and "thorn in the side of Putnam County Schools."[10] However, Doe simply provides no facts to support these conclusions. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice to plead a claim."  *Iqbal,* 556 U.S. at 678.

Assuming *arguendo* that the Board reported Doe to the prosecutor and the Department without listening to his explanation of what happened with the student, those acts do not rise to the level of a constitutional deprivation actionable under 42

---

[10] Doe raises this claim for the first time in his memorandum in opposition to the Board's motion. (ECF No. 42). Doe describes his "whistleblowing" activities as (1) making a proposal to allow student tutoring on faculty senate days, a proposal that was unpopular with his school's principal but was nevertheless adopted by the Board, and (2) complaining to the superintendent about two negative evaluations he subsequently received, which Doe claims were fraudulently created and issued in retaliation for his tutoring proposal. According to Doe, he filed two official grievances based upon the evaluations and asked to be placed on the agenda for the Board's next meeting to discuss his concerns, a request that the superintendent was disinclined to grant. Other than speculating that his activity was seen as whistleblowing by the Board, Doe states no basis for his contention.

U.S.C. § 1983. "A plaintiff alleging a procedural due process violation 'must show a deprivation of a constitutionally protected interest and that the deprivation was achieved by means of constitutionally insufficient procedures.'" *Searles v. Board of Education of the City of Chicago,* 2004 WL 1474583 *4(N.D.Ill. June 29, 2004), *citing Bogosian v. Bd. of Ed.of Cmty. Unit Sch. Dist. 200,* 134 F.Supp.2d 952, 962 (N.D.Ill. 2001). As the Board points out, it was required by West Virginia law to report the student's accusations of sexual abuse and, thereafter, took no action against Doe. Furthermore, the Board had no involvement in the conditional agreement not to prosecute, in the threat of future prosecution, or in the management of the Department's administrative proceedings. Doe concedes that he voluntarily resigned his teaching position at the insistence of Sorsaia and was threatened with revocation proceedings by the Department. Accordingly, the Board is not responsible for any of the alleged constitutional deprivations.

Moreover, to support a claim against the Board, Doe must identify some basis for recovery. Doe argues that the Board was "integrally connected to the events that led to the eventual resignation under duress," yet Doe fails to set forth factual allegations sufficient to support a claim of municipal liability.[11] A municipality cannot be held liable under the doctrine of *respondeat superior* "for all constitutional violations of their employees simply because of the employment relationship." *Spell v. McDaniel,* 824 F.2d 1380, 1386 (4th Cir. 1987), citing *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). "Instead, municipal

---

[11] "The United States Supreme Court has recognized that school boards and municipalities are indistinguishable for purposes of § 1983." *King v. Charleston County School Dist.*, 664 F.Supp.2d 571, 582 (D.S.C. 2009), *citing Monell v. New York City Dept. of Soc. Servs.,* 436 U.S. 658, 696, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

liability results only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Id, citing Monell,* 436 U.S. at 694; *Polk County v Dodson,* 454 U.S. 312, 316, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (Execution of the policy or custom must be the "moving force" behind the alleged constitutional violations). This "official policy" requirement was "intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *King v. Charleston County School Dist.*, 664 F.Supp.2d 571, 582 (D.S.C. 2009), *citing Pembaur v. City of Cincinnati,* 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). *Riddick v. School Bd. of the City of Portsmouth,* 238 F.3d 518, 522-23 (4th Cir.2000). Under *Monell*, the Board may be liable for damages, as well as injunctive or declaratory relief when:

> The action that is alleged unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.  Moreover ... [the Board] ... may be sued for constitutional deprivations visited pursuant to [its] "custom" even though such a custom has not received formal approval through the body's official decision-making channels.

*Monell,* 436 U.S. 690-91.  A policy is 'a course of action consciously chosen from among various alternatives respecting basic governmental functions, as opposed to episodic exercises of discretion in the operational details of government.'  A custom exists when the 'persistent and widespread' practices of governmental officials are 'so permanent and well-settled as to [have] the force of law." *Lavender v. City of Roanoke Sheriff's Office,* 826 F.Supp.2d 928, 935 (W.D.Va. 2011), *citing Spell v. McDaniel,* 824 F.2d 1380, 1386 (4th Cir. 1987).

Here, Doe makes no assertion that the Board, or any of its employees, reported the accusations against him based upon a constitutionally deficient policy or custom adopted by the Board. Instead, Doe argues that the "lead principal" of the school at which he worked cooperated with the police, vouched for the credibility of the student, and showed no interest in hearing Doe's side of the story because he had personal differences with Doe and was purportedly "out to get him." The undersigned **FINDS** that none of these allegations implicates the Board, describes a widespread custom or practice, or suggests anything other than "episodic exercises of discretion" by the principal at the particular school where Doe worked. Given that Doe has failed to plead any factual allegations giving rise to a plausible cause of action against the Board under 42 U.S.C. § 1983, the complaint should be dismissed against it.

### C.   Defendants West Virginia Department of Education and Sherri Goodman

Doe seeks an order from the Court enjoining the Department and Goodman from finalizing their investigation and potentially revoking his teaching certificates. He claims that the Defendants have had ample opportunity to complete the process, but have failed to do so.

In regard to the Department, the undersigned **FINDS** that the doctrine of sovereign immunity is fatal to Doe's complaint. Generally, the doctrine of sovereign immunity bars suit against a State or State agency unless (1) the State or State agency waives immunity; (2) Congress has abrogated a State's immunity under particular circumstances; or (3) the suit is directed against an appropriate state official and requests only prospective relief. *Noe v. West Virginia,* 2010 WL 3025561 at *4 (N.D.W.Va.).  The Department, which unquestionably is a State agency, has explicitly

raised its sovereign immunity as a defense to the suit; therefore, the first exception is inapplicable in this case. Moreover, the law is well-settled that Congress did not intend to abrogate a State's sovereign immunity under § 1983; thus, the second exception is also inapplicable. *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). Examining the final exception, the undersigned notes that Doe seeks prospective injunctive relief from the Department, but has failed to direct his suit against an appropriate official. Therefore, the Department should be dismissed.

In *Ex Parte Young*, 209 U.S. 123 (1908), the Supreme Court recognized the need to permit claims against State officers to enjoin violations of federal law and carved out a narrow exception to sovereign immunity for that purpose. However, the exception "applies only to prospective relief, does not permit judgments against state officers declaring that they violated federal law in the past, and has no application in suits against the States and their agencies, which are barred regardless of the relief sought." *Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, supra* at 146 (internal citations omitted and emphasis added). Hence, "[t]he *Ex Parte Young* exception is directed at 'officers of the state [who] are clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings'" to enforce an unconstitutional act against affected parties. *McBurney v. Cuccinelli, II,* 616 F.3d 393, 399 (4th Cir. 2010), citing *Ex Parte Young,* 209 U.S. at 155-156. The state officer named in the suit must have "proximity to and responsibility for the challenged state action" before the exception can be invoked. *Id.; See Thomas v. Nakatani,* 309 F.3d. 1203 (9th Cir. 2002) (acknowledging that the *"Ex Parte Young* doctrine creates a fiction by allowing a person to enjoin future state

action by suing a state official for prospective injunctive relief rather than the state itself. Even so, the Supreme Court has emphasized the importance of respecting this fiction.").

Plaintiff does include Goodman as a defendant, but does not suggest that she was named as the responsible official for the Department. Whether Goodman is the appropriate official is unclear, but is unlikely. Although Goodman is identified as the Department's Staff Attorney and wrote the notification letter to Doe, she indicates that she makes only a "recommendation" to the Department to proceed with a hearing and she ultimately has no responsibility for the decision of whether to revoke a teaching certificate, which is a decision that statutorily rests with the State Superintendent. Goodman's role in the revocation procedures appears limited to providing legal consultative services. Accordingly, no officer responsible for enforcing the challenged procedures has been named and, thus, the Department is entitled to dismissal based upon sovereign immunity.

In regard to Goodman, Doe does not expressly allege in what capacity he sues her. Accordingly, "the court must examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine" the appropriate capacity. *Biggs v. Meadows,* 66 F.3d 56, 61 (4th Cir. 1995). Doe primarily seeks injunctive relief from Goodman in her role as Staff Attorney for the Department. The violations of procedural due process asserted against Goodman are the same as those asserted against the Department. In addition, Doe often lumps Goodman and the Department together and treats them as one entity in his arguments. For these reasons, the undersigned concludes that Doe sues Goodman in her official capacity. In *Will,* 491 U.S. at 71, the Supreme Court held that "neither a State nor its officials acting in their

official capacities are 'persons' under § 1983." As the Court explained, "[o]bviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Id.* In addition, sovereign immunity extends to prohibit complaints for money damages against state officials acting within their official capacities. *Id.* Consequently, the undersigned **FINDS** that Goodman is immune from a claim for money damages to the extent that such a claim is made.

Immunity from money damages does not end the analysis of the complaint against Goodman, however. For purposes of prospective injunctive relief, Goodman may be sued in her official capacity given that "official-capacity actions for prospective relief are not treated as actions against the State." *Id.* at 71, *citing Kentucky v. Graham,* 473 U.S. 159, 167, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). Even still, Doe's complaint against Goodman falls short for other reasons. First, and most fundamental, Doe's civil rights were not violated by Goodman. To sustain a *prima facie* case under § 1983, Doe must show that a constitutionally protected interest of his was deprived by Goodman and that the deprivation was achieved by means of constitutionally insufficient procedures. Doe asserts that he had a protected interest in retaining his teaching position and teaching certificates. Accordingly, if his position and certificates were taken from him by Goodman, without due process of law, Doe could argue an actionable deprivation. However, Goodman had nothing to do with Doe's resignation from his teaching position, and Doe's teaching certificates have not been revoked. To the contrary of violating Doe's rights, Goodman has taken the steps necessary to insure that Doe receives due process when he appears before

the Department for administrative proceedings. *See Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 533, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985)

Although not precisely on point, in *Loudermill,* the Supreme Court outlined the duties of an employer in the context of firing a public employee who possessed "property rights in continued employment." The Court concluded that due process required the employer to conduct a pretermination hearing that provided the employee with reasonable notice of the charges against him and an opportunity to be heard at a meaningful time and in a meaningful manner. *Loudermill, 470 U.S. 532, 547, citing Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965).

In this case, Goodman sent Doe notice that she intended to recommend a revocation hearing based upon the allegations of abuse lodged by Doe's student. (ECF No. 1-1 at 1). Doe was given the opportunity to avoid further proceedings and was advised of his right to retain legal representation. Goodman explained the process to Doe, indicating that he would have a chance to present evidence to refute the charge or provide an explanation of mitigating circumstances. She offered to address his questions and concerns. *Id.* As this correspondence indicated, Goodman clearly intended to afford Doe notice and a meaningful opportunity to be heard prior to any decision to revoke his teaching certificates.

As a separate constitutional violation, Doe argues that Goodman has taken too long to finalize her investigation and resolve the matter. Doe claims that the delay has "chilled" his ability to seek employment as a teacher. This contention likewise is without merit. Doe provides no factual basis upon which to conclude that non-action by Goodman has affected his ability to apply for or obtain a teaching position. In

truth, as long as he retains his teaching certificates, he remains eligible in the State of West Virginia for employment as a teacher. Moreover, Doe presents no factual or legal support for his claim that Goodman's delay in scheduling a hearing amounts to a constitutional violation.[12] The relevant West Virginia statutes and regulations include no time frames for completion of the investigation or institution of revocation proceedings. Significantly, Doe makes no representation that he responded to the letter from Goodman, requested a hearing, or took any steps to hasten the administrative process. Therefore, Doe's allegations of due process violations by Goodman are insufficient to maintain a plausible claim against her.

A second reason for dismissal of Doe's claims against Goodman is the doctrine of abstention set forth in *Younger v. Harris,* 401 U.S. 37, 44, 91 S.Ct. 746, 750–51, 27 L.Ed.2d 669 (1971) and its progeny. In *Younger*, the Supreme Court admonished federal courts to refrain from exercising equitable jurisdiction in pending state criminal proceedings even when a federal constitutional violation was raised, unless extraordinary circumstances existed to justify federal intervention. The Court explained that state courts should be free to determine matters of state law, vindicate important state interests, and address constitutional concerns without interference from federal courts except when an injunction was plainly necessary to address a situation of immediate and irreparable injury. The Court later extended *Younger* abstention to state court civil proceedings and quasi-judicial administrative

---

[12] In *Loudermilk,* the Supreme Court observed that delay in conducting a post-termination hearing did not create a separate due process claim unless the plaintiff stated grounds demonstrating that the hearing was *unreasonably* prolonged. *Id.* at 546. *Loudermilk* can be distinguished from the instant case inasmuch as the relevant Ohio statute called for a post-termination hearing in 30 days and the potential injury suffered by the plaintiff, whose property right had already been taken, was much greater than that suffered by Doe. Even with these added considerations in *Loudermilk*, the Court did not find that a period of nine months from appeal of termination to final adjudication was *per se* unconstitutional.

proceedings when (1) the state was a party and important state interests were at stake and (2) the state system provided an opportunity for the adjudication of federal constitutional claims. *Moore v. Sims,* 442 U.S. 415, 423–26, 99 S.Ct. 2371, 2377–79, 60 L.Ed.2d 994 (1979); *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). The Court devised a three-part test to determine the appropriateness of abstention in a given action, requiring the District Courts to consider (1) the nature of the state proceedings in order to determine whether the proceedings implicate important state interests, (2) the timing of the request for federal relief in order to determine whether there are ongoing state proceedings, and (3) the ability of the federal plaintiff to litigate its federal constitutional claims in the state proceedings. *Middlesex County,* 457 U.S. at 432.

In the present case, the Department is in the midst of the administrative process of addressing the charges against Doe and assessing their impact on the continuation of his teaching certificates. Although an evidentiary hearing has not yet been scheduled, Doe concedes that the matter is nevertheless pending. *See, also, O'Neill v. Coughlan,* 511 F.3d 638 (6th Cir. 2008) (The filing of a grievance against an attorney with the Office of Disciplinary Counsel initiates the disciplinary procedure; thus, the grievance is part of the state's "judicial proceeding"). The proceedings, which will determine Doe's suitability to continue teaching the children of West Virginia, are plainly quasi-judicial in nature and implicate important state interests. *See Scott v. Stewart,* 211 W.Va. 1, 560 S.E.2d 260 (2001). Finally, the procedures delineated by West Virginia's statutes and regulations provide Doe with a full and fair opportunity to litigate his federal constitutional claims. *West Virginia Code § 18A-3-*

*6; 126 C.S.R. § 4-4.82.* Doe is entitled to have counsel represent him at the evidentiary hearing where he can present exculpatory evidence, raise constitutional challenges, or provide an explanation for the questioned behavior. If the State Superintendent thereafter orders revocation of Doe's certificates, Doe may request judicial review of the decision by the appropriate Circuit Court and the West Virginia Supreme Court of Appeals. At that time, he can again raise federal constitutional challenges. *Scott,* 560 S.E.2d at 262.

The Supreme Court in *Younger,* and the Fourth Circuit in *Moore v. City of Asheville,* 396 F.3d 385, 388 (4th Cir. 2005), make clear that "a defendant to a coercive state administrative proceeding must exhaust his state administrative and judicial remedies and may not bypass them in favor of a federal court proceeding in which he seeks effectively 'to annul the results' of a state administrative body." Doe has not exhausted the administrative process nor the state's judicial remedies; accordingly, this Court should abstain from entertaining Doe's claims related to Goodman and the Department. *Beam v. Tatum,* 299 Fed. Appx. 243 (4th Cir. 2008) (Motorist seeking a declaration that the manner in which the DMV imposed a civil penalty was unconstitutional failed to exhaust his state court remedy; therefore, *Younger* abstention was appropriate). Therefore, the undersigned **FINDS** that the claims against Goodman are unfounded and the doctrine of abstention requires the Court to refrain from exercising jurisdiction over Doe's claims related to the administrative proceedings.

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the presiding United States District Judge accept and adopt the findings herein and

**RECOMMENDS** that Defendants' Motions to Dismiss be **GRANTED** (ECF No. 12, 25, 30, and 52) and Plaintiff's Complaint (ECF No. 1) be **DISMISSED, with prejudice,** for failure to state a claim.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Federal Rules of Civil Procedure 6(d) and 72(b), Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the Plaintiff, Defendants, and any counsel of record.

**FILED:** June 18, 2012.

Cheryl A. Eifert
United States Magistrate Judge